IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED 97 FEB 26 PM 3:14 U.S. DISTRICT COURT N.D. OF ALABAMA

| | |
|---|---|
| BENITA WRIGHT, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NUMBER |
| CHARLES VANN, d/b/a CENTRAL TELCOM, INC., | ) 95-C-1310-S |
| Defendant. | ) |

ENTERED
FEB 26 1997

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on the evidence adduced at the trial of this cause, the court makes the following Findings of Fact and Conclusions of Law.

Benita Wright is a black female citizen of the United States and of the State of Alabama. She began working for defendant Charles Vann, d/b/a Central Telcom, Inc., in December 1992. Her initial pay rate was $5.00 per hour as a telemarketer of long distance services.

In April 1993, plaintiff was promoted by one of her supervisors, Mark Warner, to the position of sales/telemarketing manager over the satellite TV sales business. Her pay rate was then increased to $7.00 per hour. In this new position, plaintiff supervised the telemarketers and sales representatives. She had the authority to hire new employees to fill vacancies as they occurred.

20

Plaintiff hired a black male, Toby Walker, as a sales representative in the area of Clanton, Alabama. Upon learning of this, Vann told plaintiff that she should not have hired a black person for the job, and that prospective white customers did not want a black person coming to their homes. He told plaintiff that Walker would probably be killed, and that she should "weed [him] out." At Vann's insistence, plaintiff fired Walker.

After plaintiff hired other black employees, Vann removed her hiring authority. Other than the black employees hired by plaintiff, she was the only black employee of Vann's company.

The atmosphere of plaintiff's workplace was racially hostile. The hostility was largely created and nurtured by Vann. On one occasion, a white employee in Vann's presence asked plaintiff if she were having "barbequed chitlins" and "fried watermelon" for Christmas. Vann laughed at the inquiry. On another occasion, the same employee told plaintiff that she wanted plaintiff to shine her shoes. Again, rather than cautioning the white employee, Vann laughed.

Vann once asked plaintiff, "Why do black people have big butts?" On at least three occasions, Vann told plaintiff that he knew that she could dance because she is black. He also told her, in the presence of her fellow employees, that black people are violent, lazy, welfare recipients, and drug dealers.

2

On one occasion, plaintiff wore a t-shirt which read: "Respect the Black Woman." When Vann saw the t-shirt, he threatened to slap plaintiff, and gestured as if he were going to do so. He told plaintiff that she did not have to advertise her identity.

Vann constantly referred to plaintiff and her job performance as "a black thing." In referring to his daughter's sessions in a tanning salon, Vann told plaintiff that she did not need a tanning salon because she had a "year round" tan.

On December 23, 1993, Vann arbitrarily removed plaintiff from her position and gave it to a white employee. He then assigned plaintiff to a shift which he knew she could not work because of her young children. When plaintiff objected to the shift change, Vann fired her.

Vann took these actions because of plaintiff's race.

Plaintiff thereafter filed a charge of racial discrimination against Vann's company with the Equal Employment Opportunity Commission ("EEOC").

A few months later when plaintiff returned to the company's premises to find out why she was still being billed for a pager which she had turned in at the time of her discharge, Vann admitted that she had been fired because of her race. He said, "Maybe I did fire you because of who you are. This is the only time I will ever admit to it." As of that date, Vann had been served a copy of plaintiff's EEOC charge.

Vann then offered plaintiff her old job back, with a $3.00 hourly rate increase, plus commissions. Plaintiff accepted his offer, and reported to work the following Monday morning. She worked for three days, and Vann fired her again. He told her that she could be anything from a secretary to a janitor, but that he already had a secretary. He told her that she could clean the toilets.

Vann told plaintiff that he didn't "give a damn" about the EEOC; that "If I'm going to listen to them, I might as well close my business."

Vann concluded by telling plaintiff that her job was no longer available and that, "I should punch you out."

Plaintiff was not paid for her last three days of work for Vann.

Although plaintiff diligently sought interim employment, she was not able to find a job until September 1994. She has continued to mitigate her damages; and as a result, she has lost only $26,614 in backpay.[1] In lieu of prejudgment interest, the court will enhance the award by fifteen percent ($3,992.10).

Plaintiff suffered considerable mental anguish, embarrassment, and humiliation at the hands of Vann and his company. She is entitled to $50,000 for this element of damages.

---

[1] Central TelCom is no longer in business, but Vann has operated other companies since its demise. In the absence of Vann's racially discriminatory actions, plaintiff would have continued to work for one of his companies after Central TelCom folded.

4

Vann's conduct was malicious, wanton, and in utter disregard of plaintiff's right to be free of racial discrimination in the workplace. Punitive damages of $15,000 should be sufficient to punish him and to warn others against engaging in similar unlawful conduct.

Plaintiff's counsel has reasonably expended 56.80 hours in the prosecution of this case. His hourly rate is $175, which the court finds to be reasonable.

Based on the foregoing Findings of Fact and Conclusions of Law, the court shall enter Final Judgment for the plaintiff.

DONE this 26th day of February, 1997.

*[signature]*
UNITED STATES DISTRICT JUDGE
U. W. CLEMON